## THE COLUMBUS INDUSTRIAL BANK
vs.
## CHARLES G. MILLER, ET AL.

Superior Court          Fairfield County          File #53214

MEMORANDUM FILED APRIL 8, 1938.          125 Conn. 313

Irving Elson, of Bridgeport, for the Plaintiff.

Raphael Korff, of Bridgeport, for the Defendant.

FOSTER, J.   The plaintiff is an industrial bank, as defined in chapter 211 of the General Statutes, Revision of 1930.

On November 21, 1931 the five defendants executed and delivered to the plaintiff their promissory note in words and figures as follows:

"No. 10,074

## NOTE

## THE COLUMBUS INDUSTRIAL BANK

$1,000.00          Bridgeport, Conn., November 21, 1931

Fifty Weeks after date, for value received, we, jointly and

severally, promise to pay to the order of THE COLUMBUS INDUSTRIAL BANK, at its office in the City of Bridgeport, the sum of ONE THOUSAND DOLLARS ($1,000.00) having deposited herewith as collateral security Installment Certificate of Indebtedness for Investment of said Bank Class C. No. 10,074 and...........................................................................................................................

And the makers hereof further promise, whenever requested by said Bank to increase the amount of security for this note to the satisfaction of the Bank and that, should there be a default in any of the weekly installments on the above certificate for a period of two days after the same becomes due and payable, or for failure to comply with any other regulation of said Bank, then this note shall become due and payable at once at the option of the holder hereof, the makers hereby waiving demand of payment and notice of non-payment thereon.

The makers of this note further agree that in the event that this note is not paid at maturity it shall bear interest from date of maturity until paid, at the rate of twelve per cent per annum.

It is also agreed by the makers of this note that, should the said Bank at any time retain or employ an Attorney-at-Law for the collection of this note or any part thereof, then the amount of such Attorney's fees and charges shall be paid by the makers in addition to this obligation."

On the same day an instrument called an Installment Certificate of Indebtedness for Investment was executed by the plaintiff and the defendant, Charles G. Miller. This instrument is as follows:

"No. 10,074 Class C $1,000.00

THE COLUMBUS INDUSTRIAL BANK

INSTALLMENT CERTIFICATE OF INDEBTEDNESS FOR INVESTMENT

Sold to ...............................................CHAS. G. MILLER...............................
By THE COLUMBUS INDUSTRIAL BANK for the sum of ONE THOUSAND DOLLARS.

The registered owner hereby agrees to pay at the office of the Bank during its office hours the sum of One ($1.00) Dollar each and every week for fifty (50) consecutive weeks for every Fifty ($50.00) Dollars of this certificate or its

multiple, until the entire sum has been fully paid.

Upon payment in full of this certificate and upon request of the registered owner subject to the conditions herein, this certificate may be converted into a Full Paid Investment Certificate of the said Bank, of a like amount, bearing interest at the rate of seven per cent (7%) per annum payable semi-annually on the first days of January and July of each year at the office of said Bank.

If the payments on this certificate are made regularly every week and the amount of this certificate is paid in full as agreed, the Bank will pay to the registered owner interest at the rate of two per cent (2%) per annum.

Larger weekly installments than those above agreed may be paid by the registered owner; but, if the aggregate amount of paid up installments is less than the aggregate amount of installments due, the said Bank, may at its option demand the surrender of this certificate, cancel the same and refund to the registered owner the amount paid on said certificate.

Upon default in the payment of any weekly installment on this certificate for a period of two (2) days after the said payment becomes due and payable, or for failure to comply with any other regulation of said Bank, then the note for which this certificate has been pledged as security shall become due and payable at once at the option of the holder thereof, demand of payment and notice of non-payment thereon hereby being waived by the registered owner of this certificate.

The registered owner or pledgee of this certificate may at anytime withdraw the entire amount paid or any part of it, provided he shall give five (5) days notice in writing to the Bank. The Bank may, at its option, refund to the registered owner or pledgee any sum paid on said certificate upon demand.

This certificate shall not be valid for any purpose until it shall have been duly signed by the authorized officer.

IN WITNESS WHEREOF The Columbus Industrial Bank has caused this certificate to be signed by its duly authorized officer and its seal to be affixed hereto this 21st day of November, 1931.

THE COLUMBUS INDUSTRIAL BANK
M. Del Vecchio, Treasurer.

Bridgeport, Conn., November 21st, 1931.

I hereby subscribe for the above Certificate of Indebtedness for Investment, and agree to the above terms thereof.

Chas. G. Miller.

Bridgeport, Conn., November 21st, 1931.

For value received, I hereby assign all my rights, title and interest, in and to this Certificate of Indebtedness for Investment to The Columbus Industrial Bank.

Signed in presence of:

A. Del Vecchio

Chas. G. Miller."

The plaintiff brings this action for recovery of $1,000, being the principal of the note and attorney's fees for collection.

The real defense, appearing in the answer, is that the plaintiff violated the provisions of section 4732 of the General Statutes, Revision of 1930, which is as follows:

"No person and no firm or corporation or agent thereof, other than a pawnbroker as provided in section 2950, shall, as guarantor or otherwise, directly or indirectly, loan money to any person and, directly or indirectly, charge, demand, accept or make any agreement to receive, therefor, interest at a rate greater than twelve per centum per annum."

Since it is the claim of the defendants that more than 12% per annum interest is charged upon the amount loaned, the Court received evidence as to a prior transaction, in settlement of which this transaction was made, in proof of the actual amount of money paid by the plaintiff to the defendants, recovery of which is claimed. The Court does not consider the evidence of the detail of the prior transaction. We commence our consideration of this case upon the foundation, that upon the execution and delivery of the note by the defendants to the plaintiff and the execution and delivery of the investment certificate by the defendant, Charles G. Miller to the plaintiff, the plaintiff executed and delivered its check for $920 to Charles G. Miller, who endorsed the same and delivered it to the plaintiff in part payment in settlement of the prior transaction.

The plaintiff claims that the note and the investment certificate were separate and distinct transactions, carried out in accordanec with section 4034 of the General Statutes, Revision of 1930, as amended by section 1508c of the Cumulative Supplement of the General Statutes (1935), which is as follows: "In addition to the general powers conferred upon corporations by section 3382, except as to the issuance of more than one class of stock, each industrial bank shall have the power to loan money, secured by mortgage of real estate located in this state, or on personal security; to discount or purchase notes, bills of exchange, acceptances or other choses in action and to sell its secured or unsecured certificates of indebtedness for investment or to be pledged as security for a loan or loans, whether made contemporaneously or otherwise, and to receive from purchasers of such certificates payment therefor in installments or otherwise, the receipt of, or the agreement to receive, payment for any such certificate in equal weekly or monthly instalments extending over substantially the period of any loan secured by a pledge thereof not to be construed as part payment of such loan. The total amount of outstanding certificates of indebtedness sold as investments, and not held by such bank as security for loans, shall, at no time, exceed the total of three times its combined capital, surplus and undivided profits."

The plaintiff claims that the plaintiff made an interest charge of $60 or 6 per cent of $1,000, the amount loaned, and of $20 or 2 per cent of $1,000, the amount loaned, as a service charge; a total of 8 per cent on $1,000, paid in advance; being less than 12 per cent on $1,000 or $920, the amount paid.

The defendants claim that the note and certificate of investment were one transaction whereby the plaintiff loaned to the defendants $920 on their note for $1,000 and also were to receive $20 per week until the full amount of $1,000 of the note was paid.

It is conceded by the plaintiff that, if the two instruments constituted one transaction, then the plaintiff was to receive more than 12 per cent on the amount loaned.

It is interesting to note that this plaintiff was the plaintiff in a similar action reported in 11 Conn. 84, decided in 1930 (*Columbus Industrial Bank vs. Rosenblatt*). The law appearing in section 1508c of the Cumulative Supplement to the General Statutes (1935), was passed in 1931.

Upon the books of the plaintiff the note and the certificate of investment appear as two separate transactions, and all the payments made by the defendants are credited upon the certificate of investment, not upon the note. On the books of the plaintiff it, therefore, appears that nothing has been paid upon the note, except the $80, which was paid in advance by its deduction from the $1,000. The plaintiff has evidently endeavored to follow the letter of the law, but whether it has succeeded in so doing remains for further consideration.

It is first to be observed that the note and the certificate of investment bear the same number, "10,074", and the same date and were delivered to the plaintiff simultaneously. The note is executed by five persons, but only one of these five persons executed the certificate of investment; and I find that each contains the provision identical in effect. In the note appears: ". . . should there be a default in any of the weekly installments on the above certificate for a period of two days after the same becomes due and payable, or for failure to comply with any other regulation of said bank, then this note shall become due and payable at once at the option of the holder hereof . . . ." In the certificate of investment appears: "Upon default in the payment of any weekly installment on this certificate for a period of two days (2) after the said payment becomes due and payable, or for failure to comply with any other regulation of said Bank, then the note for which this certificate has been pledged as security shall become due and payable at once at the option of the holder thereof . . . ."

A book was issued by the plaintiff, in which were entered payments on the certificate of investment. This book bears the same number, 10,074. The plaintiff's treasurer and manager testifies that this book was at times in the hands of defendants other than Miller, and that defendants other than Miller made payments to the plaintiff, which were entered in the book; and yet the defendant Miller was the only one of the defendants who executed the certificate of investment.

The treasurer and manager of the plaintiff testifies in part as follows:

"Q. Mr. Del Vecchio how was this loan to be repaid? A. $20 weekly installment, the loan you mean?

Q. Please repeat the question. (Last question repeated

by the stenographer.) A. $20 in weekly installment. I should add on the certificate.

Q. All right, which is it? I asked you, how was the loan to be repaid? A. $20 in weekly installment on the certificate.

Q. The certificate was part of the loan? A. Part of the loan, yes sir.

Q. In other words, without the certificate no loan would be made? A. No sir.

Q. In other words, in every transaction of your institution, the man borrowing the money, in addition to the application signs the certificate? A. Right.

Q. And the note, of course? A. Right.

Q. How much has been paid and credited to the certificate in this case? A. This— (Last question repeated by the stenographer.) A. $360.

Q. Have you any record as to who made those payments? A. Yes sir.

Q. Who made those payments? A. Up to $300 Madwid and Aldo, they paid it $10 each week.

Q. Let me get that straight; you say up to $300? A. Up to $300.

Q. In other words, they each paid $150? A. Right. The $60 we had; $80 by Aldo with two checks came back from the bank, insufficient funds, so it would leave a balance of $360.

Q. Let me understand that. You mean there was an additional $80 in checks paid? A. Yes, by Aldo.

Q. By Aldo, but he continued to pay and two came back, so all he paid was $60? A. Yes, more as Madwid.

Q. Now this was credited to the certificate? A. To the certificate, right.

Q. In whose name is the certificate? A. Miller.

Q. Is there anything on the certificate which says payments by Madwid or Aldo, or any of the other co-makers, should be credited to the certificate? A. No.

Q. There isn't? A. No.

Q. Now do you say that there is still one thousand dollars due on the note? A. Right.

Q. Although the co-makers have made payments of $360? A. On the certificate, on the certificate as—

Q. Just a moment please. They have made payments of $360, that can be answered yes or no? A. Yes.

Q. But you credited it to the certificate and not to the loan, is that right? A. Yes.

Q. Why did you credit it to the certificate when Aldo and Madwid are not a party to the certificate? A. Because the certificate is a collateral for the loan.

Q. What happens to the $360? A. It's credited on the certificate.

Q. What happens to it now? A. It's still—I got it."

It thus appears that the note and certificate of investment were tied closely together by number, date and the practically identical default provision and payments made by defendants other than Miller, the signer of the certificate of investment, and that the note and certificate of investment were considered and treated by the plaintiff and the defendants as one transaction. The plaintiff merely endeavored to make the transaction conform to the statute by bookkeeping methods. ". . . The law will tear off any disguise from the transaction and if the purpose is to evade the provisions of the statute the loan will be treated as usurious." *Atlas Realty Corp. vs. House,* 123 Conn. 94, 99; 192 Atl. 564, 566.

In the instant case there is such a purpose to evade the provisions of the statute. The loan is usurious.

Judgment is rendered in favor of the defendants against the plaintiff.